IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL RAY FORBES, #13302-078, | § § | |
| PETITIONER, | § § | |
| v. | § | CIVIL CASE NO. 3:22-CV-582-L-BK |
| R ZOOK, ET AL., | § § | |
| RESPONDENTS. | § § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, Petitioner Michael Ray Forbes's petition for habeas corpus under 28 U.S.C. § 2241 was referred to the undersigned United States Magistrate Judge for case management. As detailed herein, the petition should be **DENIED**, and this case should be **DISMISSED WITH PREJUDICE**.

### I. BACKGROUND

Forbes was convicted in the United States District Court for the Eastern District of Texas of conspiracy to distribute methamphetamine, in violation of 21 U.S.C. § 846, and sentenced to 145 months' imprisonment. Doc. 3 at 3. Here, Forbes challenges a subsequent prison disciplinary infraction he received at FCI Seagoville for possessing drugs. *See* Doc. 10 at 20 (Discipline Hearing Officer Report).

On May 15, 2020, Forbes received an incident report charging him with "Possession of Drugs or Alcohol" (Prohibited Code 113), based on a search of his property at FCI El Reno and subsequent testing of a suspicious substance found therein which tested positive for heroin. Doc. 10 at 14.

A hearing before the Unit Discipline Committee (UDC) was held. Doc. 10 at 14. During the hearing, Forbes said, "[i]t's not mine. My property has been there for almost 3 months. I would like them to fingerprint it." Doc. 10 at 14. The UDC determined Forbes to be guilty and referred the matter for a hearing before the Discipline Hearing Officer (DHO). Doc. 10 at 14. On May 16, 2020, Forbes was presented with a form titled *Inmate Rights at Discipline Hearing*, which he signed acknowledging his receipt. Doc. 10 at 16. Forbes did not request witnesses or a staff representative for the DHO hearing. Doc. 10 at 18.

A DHO hearing was held on May 20, 2020. Doc. 10 at 20. Forbes stated, "[m]y property has been in El Reno and I just got it. It's not mine. I have RDAP behind me." Doc. 10 at 21. Nevertheless, the DHO concluded that, "[b]ased upon the greater weight of the evidence, the eye witness account of the incident, the photos, staff memorandums, NIK test results and the written report, the DHO is convinced inmate FORBES, MICHAEL…committed the prohibited act of Possession of Intoxicants in violation of Code 113. Doc. 10 at 21. As sanctions, the DHO (1) disallowed 41 days of Forbes's "Good Conduct Time"; (2) imposed 10 days of disciplinary segregation; and (3) prohibited e-mail, phone, visitation, and commissary privileges for 120 days. Doc. 10 at 21.

On June 16, 2020, the DHO report was delivered to Forbes. Doc. 10 at 21. Forbes subsequently filed an unsuccessful Regional Administrative Remedy Appeal, and his Central Office Administrative Remedy Appeal was also denied. Doc. 4 at 17-18, 25.

In his Section 2241 habeas petition, Forbes argues that (1) the BOP staff did not follow BOP policies and procedures in searching his property; (2) conflicting evidence about whether the substance was an amphetamine or heroin undermines the disciplinary findings; (3) the drug testing procedures used in his case were unreliable; and (4) it is possible that the property in

which the drugs were found did not belong to him because the BOP lost some of his personal property while transporting it from FCI Seagoville to the Federal Medical Center Fort Worth. *See* Doc. 3 at 4-5; Doc. 4 at 4-16.  Forbes requests that the DHO hearing be expunged from his record and that all sanctions be terminated.  Doc. 3 at 5.

## II. ANALYSIS

Under federal sentencing law, prison authorities may award credit to prisoners against their prison time as a reward for good behavior.  18 U.S.C. § 3624(b).  Federal prisoners may contest the loss of these so called "good time" credits under 28 U.S.C. § 2241, which is the proper procedural vehicle for a prisoner to challenge "the execution of his sentence rather than the validity of his conviction and sentence."  *United States v. Cleto*, 956 F.2d 83, 84 (5th Cir. 1992).  If a petitioner "can show that his due process rights were violated in the subject disciplinary proceedings, then § 2241 would be the appropriate remedy to use to restore his good time credits."  *See Brown v. Smith*, 828 F.2d 1493, 1495 (10th Cir. 1987) (citing *Jackson v. Carlson*, 707 F.2d 943, 946 (7th Cir. 1983)).  An inmate may not be deprived of good time credits for a disciplinary violation unless he is afforded due process.  *Wolff v. McDonnell*, 418 U.S. 539, 50 (1974).  Specifically, an inmate charged with a violation must be given (1) advance written notice of the charges, (2) the opportunity to appear and call witnesses, (3) the opportunity, in certain situations, for the assistance of a fellow inmate or staff, and (4) a written statement by the fact finder as to the evidence relied on for the decision.  *Id.* at 563-70.

As detailed in the previous section, Forbes was afforded all required due process during his disciplinary process.  He received advance written notice of the charge on May 15, 2020. Doc. 10 at 14; and he appeared before the DHO for a hearing on May 20, 2020.  Doc. 10 at 20. When Forbes appeared before the DHO, he made a statement, presented no documentary

evidence, and waived his right to request witnesses. Doc. 10 at 20. Forbes also declined the assistance of a staff representative. Doc. 10 at 20. Finally, Forbes was provided a written statement as to the evidence the factfinder relied on and the reasons for the actions taken by the factfinder. Doc. 10 at 20-21.

Forbes claims that photo sheets used as evidence against him described the illicit substance found in his property as "narcotics (amphetamines)" (Doc. 4-1 at 18-19), while the incident report noted that NIK testing positively identified the substance as heroin. Doc. 4 at 7-8. If Forbes is claiming inadequate notice because of this discrepancy, the argument lacks merit. Forbes had notice of the charge against him—possession of drugs or alcohol—which would apply regardless of whether the substance tested as heroin or an amphetamine. Further, regardless of what was depicted in the photos, the incident report stated the substance was heroin, and Forbes received the incident report five days before the DHO hearing. Doc. 10 at 14. Thus, Forbes received constitutionally adequate notice of the charge against him

The bulk of Forbes's remaining arguments focus on whether there was sufficient evidence to support the disciplinary conviction. Doc. 4 at 4-16.

In reviewing an institution's disciplinary actions, the Court need only consider if the decision was supported by "some basis in fact" or "a modicum of evidence." *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 454-56 (1983); *see also Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir. 1981) (citation omitted) (court should consider whether the disciplinary decision is "supported by 'some facts' whether any evidence at all' supports the action taken by the prison officials."). Federal court intervention is appropriate only when the DHO's action is "arbitrary or capricious." *Reeves v. Pettox*, 19 F.3d 1060, 1062 (5th Cir. 1994)). Moreover, the evidence need not eliminate all other conclusions, nor does the "some evidence"

standard require a weighing of the evidence or an independent assessment of witness credibility. *Hill,* 472 U.S. at 455-56.

Here there was clearly "some evidence" to support the DHO's conviction. The DHO relied on the incident report, in which an officer stated that while searching Forbes's incoming property, he found a suspicious piece of paper that indicated obvious signs of leaching of a liquid substance, which "NIK K" testing later confirmed to be heroin. Doc. 10 at 14. The reporting staff member's report, alone, provides some evidence to support Forbes's disciplinary conviction. *Hudson v. Johnson*, 242 F.3d 534, 536-37 (5th Cir. 2001). However, the DHO also relied on Forbes's oral statement, staff memorandums, the eyewitness account of the incident, photographs, and the NIK test results (Doc. 10 at 21), all of which further supports the disciplinary determination.

Forbes specifically argues that the NIK test results are unreliable (Doc. 4 at 8-12), but it is not this Court's job to re-weigh evidence in the prison discipline context. *See*, *e.g.*, *Hill*, 472 U.S. at 455. And, at any rate, federal courts have relied upon NIK test results to support prison disciplinary convictions, so Forbes's argument is not persuasive. *See*, *e.g.*, *Tamez v. Warden, FCC Beaumont Medium*, CIVIL ACTION NO. 1:19-CV-92, 2020 WL 1301667, at *2 (E.D. Tex. Feb. 10, 2020), *rec. accepted* 2020 WL 1289972 (E.D. Tex. Mar. 17, 2020) ("In this case, there was some evidence to support the finding that petitioner possessed narcotics. The DHO relied on the reporting officer's statement and the NIK test results. Because there is some evidence to support the guilty finding, the Court is not free to retry the disciplinary charge and substitute its opinion for that of the hearing office.").

Next, Forbes contends that the search of his property violated BOP rules because it took place in his absence. Doc. 4 at 4-7. He points specifically to a provision in a BOP Program

Statement mandating that "inmates must be present during search and inventory of their property, except when their presence would jeopardize the safety and security of the institution, or the inmate is absent from the institution." Doc. 4 at 4.

To the extent Forbes contends that the failure to follow BOP policies and procedures, in and of itself, taints the disciplinary proceedings, he is incorrect. "A prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met." *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). As explained above, because the *Wolff* requirements were met in this case, this argument is without merit.

Related to this argument, Forbes speculates that, because he was not present during the search, "corrupt staff" went into his property and planted the drugs. Doc. 4 at 6. He provides no explanation as to why a staff member would do that. Forbes's pure speculation on this point does not show that his conviction was unsupported by any evidence.

Next, Forbes claims the evidence was insufficient because a photo sheet described the drugs found as amphetamines, but the testing kit determined the drugs to be heroin. Doc. 4 at 8. But Forbes does not explain the relevance of this discrepancy in the context of the "some evidence" inquiry. Again, Forbes was convicted of possessing a drug, and there was some evidence that he did, regardless of whether it was an amphetamine or heroin.

Finally, Forbes complains that he had six boxes of personal property, but the BOP lost four of them during his transfer from FCI Seagoville to Federal Medical Center Fort Worth. Doc. 4 at 13. Forbes argues that, because of this error or malfeasance on the part of the BOP, it is unclear whether the property that was inspected at FCI El Reno was his. Doc. 4 at 13. He

speculates that BOP officers might have conspired to steal his property and "write up a bogus incident report" for possession of drugs. Doc. 4 at 15.

Again, Forbes's mere speculation is insufficient to demonstrate that no evidence supports his disciplinary conviction. Neither his briefing nor the materials he submitted detailing his attempts to obtain relief related to his lost property (Doc. 4-1 at 3-17) shows that the property in which the drugs were found was not his or otherwise refutes the evidence against him.

Because at least some evidence supports Forbes's disciplinary conviction, his § 2241 petition should be denied.

### III. CONCLUSION

For the foregoing reasons, Forbes's petition for habeas corpus under § 2241 should be **DENIED**, and this case be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** February 14, 2023.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute,* 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).